182 So.2d 906

Henry Martin **HOLLOWAY**

v.

**STATE.**

5 Div. 644.

Court of Appeals of Alabama.

Oct. 5, 1965.

Rehearing Denied Nov. 2, 1965.

Tom Radney and Wm. I. Byrd, Alexander City, for appellant.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted April 22, 1965.

Holloway was indicted and convicted of carnal knowledge of a girl of between twelve and sixteen years, his fifteen year old daughter. Code 1940, T. 14, § 399.[1] The petty jury set his punishment at the lawful maximum, i. e., ten years in the penitentiary.

### I.

The State's proof came from the girl in question and her brother. The latter was not an eye witness but did see the defendant naked, and the prosecutrix lying on a bed.

The defendant denied the act. His wife supported him so far as she had observed.

### II.

■ The State brought out that the defendant had gone to the penitentiary before on conviction of burglary. The trial judge correctly cautioned the jury that such evidence was received solely as it might affect the defendant's credibility as a witness. Code 1940, T. 7, § 434.[2]

### III.

Holloway was attended by court appointed counsel. The court below tried him August 11, 1964. He was sentenced the same day. November 13, 1964, he gave notice of appeal and petitioned the trial

1. "Any person who has carnal knowledge of any girl over twelve and under sixteen years of age, or abuses such girl in the attempt to have carnal knowledge of her, shall, on conviction, be punished at the discretion of the jury, by imprisonment in the penitentiary for not less than two nor more than ten years. * * *"
2. "No objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury; but if he has been convicted of a crime involving moral turpitude, the objection goes to his credibility."
3. "* * * The Court has further appointed Hon. W. I. Byrd and Hon. Tom

court for a free transcript under Act 525, September 16, 1963, Laws 1963, p. 1129.

His notice below says, inter alia, "* * * he [was not] informed of his constitutional [sic] right to appeal or his right to counsel to assist him in said appeal." He also ascribed his failure to meet the ten day restriction in § 3 of said Act to his "lack of education, and his indigent status and was without attorney to perfect said appeal * * *"

Whereupon, on November 19, 1964, the trial judge granted the petition, ordering the transcript to be furnished and appointed trial counsel to prosecute the appeal.[3]

Thereafter, on March 18, 1965, the transcript of the record was filed in the office of the clerk of this court. Appellant's attorneys filed their brief on March 25, 1965, and the Attorney General replied on April 1. The case came on for submission April 22. Supreme Court Rules 4 and 16.

### IV.

On the same day, April 22, the appellant, pro se, filed here a motion to strike or dismiss the brief filed in his behalf by counsel appointed by the trial court to prosecute the appeal.

Holloway claims he filed a written instrument "into the Tallapoosa County Circuit Court" purporting to waive represen-

Radney to represent the defendant throughout such appeal and on their request; the Court is of the opinion that such motion should be granted and that the defendant, the said Henry Martin Holloway, together with his attorneys, be furnished with a transcript of the evidence in this case by the Court Reporter and the Clerk of the Court.
        *        *        *        *        *
"The Clerk and the Court Reporter of this Court are authorized to furnish the defendant or his said attorneys a full and complete transcript of the evidence and all the proceedings in the trial of this case as provided by law in such cases."

tation. However, he fails to allege when he filed this "waiver." The copy before us is undated and unsigned.

He further claims now that the trial judge "at a date underterminate" entered an order dismissing or overruling said waiver; that he did not receive a copy of the brief and that counsel has been forced upon him.

First, Holloway cannot hunt with hares and hounds: either his lawyers prosecute his appeal or he does so alone. This court does not propose to expose itself to the conjunctivitis of having both client and counsel argue a case. See People v. Mattson, 51 Cal.2d 777, 336 P.2d 937; Peagler v. State, 110 Ala. 11, 20 So. 363; Const. 1901. § 6, first clause, "or either."

Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167, deals with the problem of an "intelligent" waiver of counsel.

To the law trained mind, few, if any, occasions to waive counsel can be deemed intelligent.[4] This action seems to us all the less rational on appeal where the opportunity of forensics before a lay fact finding body, the jury, has gone by.

In Chessman v. Teets, 354 U.S. 156, at 162, 77 S.Ct. 1127, at 1131, 1 L.Ed.2d 1253, we find the court, per Harlan, J., making this passing note:

"Moreover, it is at least doubtful whether, as a matter of due process, any such waiver would be effective to relieve the trial judge of a duty to appoint counsel for petitioner in connection with the settlement of this record, * * *."

Another factor is the long delay between original appointment and purported waiver. In November Holloway reminds the trial court of his right to counsel on appeal. In April, after he has had the benefit of counsel, showing no cause other than the claim of a constitutional right based on dictum in Moore v. State of Michigan, supra,

Wilkinson v. Youell, 180 Va. 321, 23 S.E. 2d 356, and Linden v. Dickson, 9 Cir., 278 F.2d 755, he wants to have another ride.

In People v. Terry, 224 Cal.App.2d 415, 36 Cal.Rptr. 722, we find Draper, P. J., saying:

"Even if defendant intended to seek counsel himself (a contingency not even suggested either in the trial court or here), he was required to act with some degree of promptness. He showed no sound reason for discharge of Mr. Maynard. To replace that attorney would require continuance to permit new counsel to prepare. A rule permitting such a move at mere whim would invite repetition and intolerable interference with orderly discharge of all business of the court. A long delayed request for substitution, unless for compelling reason, need not be granted (People v. Whinnery, 55 Cal.App.2d 794, 131 P.2d 33; People v. Linden, supra, 52 Cal.2d 1, 15, 338 P.2d 397; People v. Dorman, 28 Cal. 2d 846, 850–852, 172 P.2d 686). Even the most reluctant defendant must some day be tried, and the court is not required to disrupt its calendars indefinitely while awaiting that day."

Though the quotation is of a Fabian trial tactic, we think it apposite to the instant motion to strike and dismiss. We deny appellant's motion to dispense with his appellate counsel.

### V.

#### The Merits

The one substantial point argued here, and it was the only one available under the evidence and conduct of the trial, is whether the prosecutrix's complaint was made too late for the fact of her having made it to be relevant and hence admissible.

Counsel argue from Curry v. State, 23 Ala.App. 140, 122 So. 303; Stewart v.

4. Cf. Ex parte Allison, 42 Ala.App. 509, 169 So.2d 436.

State, 226 Ala. 15, 145 So. 160; Lee v. State, 246 Ala. 69, 18 So.2d 706; and Humphries v. State, 38 Ala.App. 388, 84 So.2d 669, that a late complaint is inadmissible.[5]

The Attorney General counters that, though delay diminishes the aura of bona fides, yet the jury is the sole judge of the credit and weight, citing Clark v. State, 28 Ala.App. 448, 186 So. 778. Under Stewart, supra, we are cited to headnote 3 that in rape, i. e., violence, where silence may import consent, the State may nevertheless rebut the fact of delay with an explanation.

The opinion concludes:

"* * * But, in case of a child, absence of complaint may be of little weight. 22 R.C.L. 1217." (See 44 Am.Jur., Rape, § 86.)

See McElroy, The Law of Evidence in Alabama (2d Ed.), § 178.01.

In Beiser v. State, 10 Ala.App. 86, 65 So. 312, this court, per Walker, P. J., put three or four days delay within the permissive frame of recent complaint, citing Underhill on Crim.Evid., § 411, and 33 Cyc. 1469. This latter compilation, fn. 81, p. 1469, cites State v. Peter, 8 Jones Law (53 N.C.) 19.

There, Pearson, C. J., discussed the charge of the trial judge vis-a-vis the evidence of the prosecutrix's failure to disclose for two weeks her being outraged created no legal presumption under the notion of silence implying consent. We find at p. 22:

"* * * it is no where held that this female instinct [to cry out and complain] is so strong and unerring as to have been made the foundation of a rule of law, as distinguished from a rule in respect to evidence, and the weight to which it is entitled; *which is*

*a matter for the jury * * *"* (Italics supplied.)

Thus—to use an extreme factual example—a six months delay in complaining was held to affect only credibility, a jury matter, as distinguished from admissibility as a question of law. State v. Hines, 79 Wyo. 65, 331 P.2d 605.

Here, the charge, "statutory rape" (T. 14, § 399), makes the consent or resistance of the victim an enquiry not material to the issue. Hence, one of the bases for showing early complaint (i. e., to show, or to tend to show, lack of consent) is done away with.

Remaining is only the purpose of showing consistency in the conduct of the girl. Undoubtedly, the longer she were to wait to complain the more explanation she ought to give for delay. This is, nevertheless, subsidiary to the rational process of subsuming guilt or acquittal from the premising facts filtered through the law fitting the charge.

■ The prosecutrix here was living at home; she stated that complaining to the mother would do no good (we bear in mind the mother testified for the defendant), and that the defendant had threatened to kill her if she told. Affirmatively, the evidence would support an inference that (1) at the earliest chance, (2) away from home, (3) in the presence of someone she could rely on (4) for effective help, she did complain of her father's conduct.

We consider Commonwealth v. Bradford, 202 Pa.Super. 468, 198 A.2d 412—a similar factual case—as being worthy of citing for the following:

"* * * we seriously doubt whether a young girl would be likely to make a prompt complaint. She might, as in this case, state that she did not tell her mother because she was afraid her

---

5. At early common law a ravished woman was required to raise the hue and cry. Holmes, J., when on the Massachusetts court called adherence to such a requirement as a "perverted survival" of the

old appeal [victim or her family's beginning prosecution directly] of felony. Commonwealth v. Cleary, 172 Mass. 175, 51 N.E. 746.

mother would put her away. She might very well fear threats of punishment or be too embarrassed to make prompt complaint. As applied to a young girl the prompt complaint theory in our judgment has little if any evidential value on the question of credibility of the victim."

The judgment below is

Affirmed.

